Whaley, Judge,
delivered the opinion of the court:
The plaintiff entered into a formal contract with the defendant to construct, furnish, and deliver twelve orienta-tors, Air Corps Type A-l, “ together with one (1) complete set of direct reading, dark-brown negative prints from which legible blueprints can be reproduced of all parts not covered by Government drawings mentioned in the specifications forming a part of this contract, and all in accordance with the bid of the contractor submitted in response to Circular Proposal No. 28162, dated November 29, 1927.”
The contract further provided that the Government would furnish a model orientator as a guide and the services of an engineer from the Materiel Division, Air Corps, U.S. Army, in an advisory capacity.
It was well understood between the parties to the contract that the construction of this orientator was in the nature of an experiment, and, necessarily, there would have to be certain -changes made from time to time in the drawings and plans. It was provided that the first orientator should be constructed and accepted by the Government before the remaining units would be made, and these remaining units were to be exact copies of the first unit as accepted. In the model provided by the Government there were motors of a one-fifth horsepower Wagner design. It was ascertained after the plaintiff had commenced work that the one-fifth horsepower Wagner motors could not be procured and it was necessary to procure other motors. Each orientator required six motors. When it was determined to procure other motors, the engineering department of the plaintiff and the engineer provided by the Government, together with the engineers of the General Electric Company decided to install motors of the General Electric Company of one-tenth horsepower. It was discovered after the installation of these motors that they were of the wrong speed and too inadequate in horsepower to satisfactorily operate the orientator, and it was necessary to take them out and install motors of one-fourth horsepower of the General Electric Company. When these latter motors were installed, the orientator functioned satisfactorily. In making the change *418 from the one-tenth horsepower motors to the motors of the larger size it was necessary to redesign parts of the frame, the motor supports, the gearing, and the wires to accommodate the larger motor. The first unit was approved .and accepted on May 1, 1929. The plaintiff then proceeded •to manufacture and deliver the remaining eleven units, which were accepted by the Government as delivered, and the full amount of the contract price was paid to the plaintiff and accepted by it.
This case involves the question of an extra allowance to the plaintiff for the changes necessitated by the installation ■of the larger motors after the smaller motors had failed. The plaintiff claims the value of the extra work and additional materials furnished upon a quantwn meruit, the Government having received the benefit thereof.
This is a suit on an express contract, and of course, there is no foundation for a reasonable value of the material. Braden v. The United States, 16 C.Cls. 389. If the plaintiff is entitled to recover, it must recover under the terms of the contract. More than a month after the first unit had been accepted, the plaintiff wrote a letter to the contracting officer requesting an order for the various changes which were necessitated by the installation of the larger motors. The contracting officer refused to issue the change order. It must be understood that the construction and operation of this oi'ientator were well known to the plaintiff to be an experiment, and, necessarily, the work to be performed required tests and trials of different motors and alterations of different parts 'by the contractor until a satisfactory orientator was constructed.
The facts in the case disclose that the plaintiff did not attempt to install a motor of the same horsepower which was in the model furnished to the plaintiff by the defendant, but experimented with a motor of one-half the horsepower, and wffien this failed to properly function the orientator, it was necessary to take it out and try another size motor. All these tests were within the terms of the contract and part of the work to be performed by the plaintiff. The plaintiff was not experienced in electrical work and had never built an orientator before.
*419 The orientators covered by the contract were to be of a new type, and in view of its knowledge that the contract work was experimental, plaintiff must be held to have agreed to the assumption of all costs of whatever character, even though expenditures not expected when its bid was submitted were incurred in performing the work. There were no material departures from the terms of the contract and there was no extra work performed. The orientators could not function without motors and the motors in the model orientator could not be procured. It was incumbent upon the contractor to furnish motors of a sufficient power to function the orientator, and in making its selection of motors, it assumed the responsibility of their being of sufficient power to properly perform the work. The installation of more effective motors was not a change in the terms of the contract, nor was it extra work or material furnished.
The contractor has delivered the twelve orientators and has been paid in full. The evidence does disclose that the plaintiff has been put to an additional cost over and above the contract price and the War Department, upon the completion of the contract, recommended to the Comproller General payment of this loss, but the latter has declined to make a corresponding recommendation to Congress.
All work performed and material furnished by the contractor were within the four walls of the contract. The petition is dismissed. It is so ordered.
Williams, Judge; LittletoN, Judge; GREEN, Judge, and Booth, Chief Justice, concur.